UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| NATALIE PHILLIPS | CIVIL ACTION NO. 05-1551-A |
|---|---|
| -vs- | JUDGE DRELL |
| RAPIDES PRIMARY HEALTH CARE CENTER, INC. | MAGISTRATE JUDGE KIRK |

R U L I N G

Before the Court is Natalie Phillips's appeal of the Bankruptcy Court's July 12, 2005 Order granting a Motion for Partial Summary Judgment in favor of Defendant/Appellee, Rapides Primary Health Care Center, Inc. ("Rapides Primary.") (Document No. 1.) The record has been lodged, and all briefing has been concluded. The Court finds no need for oral argument. For the reasons that follow, the July 12, 2005 Order of the Bankruptcy Court is REVERSED and the matter is REMANDED for further proceedings consistent with this opinion.

BACKGROUND

The procedural history of this case as established by the record of the Bankruptcy Court is not in dispute. Rapides Primary filed a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code in May 2002, which matter was assigned Case Number 02-80758 on the docket of the United States Bankruptcy Court, Western District of Louisiana, Alexandria Division. Plaintiff/Appellant, Natalie Phillips, began working as a family care physician and

administrator/medical director at Rapides Primary in August 2002 and remained so employed through August 2003. The terms of Appellant's employment, including the guidelines regarding when she could be absent from work for vacation or illness, were set forth in an employment contract executed August 2, 2002. A Chapter 11 Plan of Regorganization for Rapides Primary was confirmed by Order of the Bankruptcy Court dated September 11, 2003, but no written order consummating the Plan has yet been entered.

On December 5, 2003, Dr. Phillips filed suit against Rapides Primary in Alexandria City Court for amounts she claimed were due under her employment contract as well as penalties, attorney's fees, interest, and costs. Rapides Primary removed the action to the Bankruptcy Court, which opened an Adversary Proceeding bearing docket number 04-AP-8010. Dr. Phillips has filed a Proof of Claim outlining the total amount she contends she is owed by Appellee, and she has submitted a Motion to Request Payment of Administrative Expenses, in which she seeks priority payment for allegedly unused vacation and sick leave pursuant to 11 U.S.C. §§ 507(a)(1) and 503(b)(1)(A).[1]

---

[1] The Court notes that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("2005 Act") created a new § 507(a)(1) and renumbered former § 507(a)(1) as § 507(a)(2). Thus, for cases commenced on or after October 17, 2005, administrative expenses allowed under § 503(b) are no longer given first priority for payment. Rather, they have been moved to second priority, behind domestic support obligations. *See* 4 Collier on Bankruptcy ¶ 507.01 (15th ed. rev. 2006). Similarly, the text of § 503(b)(1)(A) is now found in § 503(b)(1)(A)(i) and has been altered to read "wages, salaries, and commissions" rather than "wages, salaries, or commissions . . . ." *See* 4 Collier on Bankruptcy p. 503-1 (15th ed. rev. 2006). Because the instant case was commenced *before* October 17, 2005, the pre-2005 version of the Bankruptcy Code is applicable and will be referenced herein.

In May 2005, Rapides Primary filed a Motion for Partial Judgment on the Pleadings or in the Alternative for Partial Summary Judgment. During oral argument, held on June 22, 2005, counsel for Rapides Primary explained Appellee was seeking only three things by way of the pending motion: (1) a legal determination that the claims for unused vacation time and unused sick leave were not entitled to priority payment as administrative expenses; (2) a legal determination that the claims for penalties and attorney's fees arising from Rapides Primary's failure to pay Dr. Phillips amounts allegedly owed under the employment contract were not entitled to priority payment as administrative expenses; and (3) a legal determination that Dr. Phillips violated the automatic stay when she filed her suit in Alexandria City Court. (Transcript of June 22, 2005 proceedings, pp. 3-8.)

In its Reasons for Decision dated July 12, 2005, the Bankruptcy Court granted the Motion for Partial Summary Judgment, finding:

> [T]he claimant here may not recover under § 503[b] or § 507(a)[1] any sums for unused vacation pay, sick leave, statutory penalties and/or attorney fees, thus leaving for determination after trial on the merits, whether or not she is entitled to recover the sums of $1,671.72 for hospital visits and excessive patient care in the amount of $3,960.00 as . . . administrative expense claim[s] under § 503(b)(1)[A].

The Bankruptcy Court did not specify why it was granting the Motion for Partial Summary Judgment regarding the automatic stay issue.

On appeal, Dr. Phillips alleges the Bankruptcy Court erred by deleting the preferred administrative claims for unused sick leave and vacation pay; deleting the unsecured state law claims for penalties and attorneys fees; and implicitly holding the stay order had been violated.

## LAW AND ANALYSIS

Standard of Review

"A bankruptcy court's findings of fact are subject to clearly erroneous review, while its conclusions of law are reviewed de novo." Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.), 258 F.3d 385, 387 (5th Cir. 2001).

In the instant case, the issues presented in the Motion for Partial Summary Judgment and on appeal are purely legal. To the extent the Bankruptcy Court attempted to resolve any disputed factual issues (such as whether Dr. Phillips is entitled to collect any amounts for unpaid/unused vacation and/or sick leave and whether the facts support any award of penalties and/or attorney's fees to Dr. Phillips) those determinations were inappropriate. Indeed, counsel for Rapides Primary stated during oral argument:

> We're not asking that the Court say these monies aren't owed Ms. Phillips. We're simply asking that the Court say if they're owed Ms. Phillips, we'll decide that at trial, but, if they're owed, they're not administrative expense claims. They're not priority claims. At best, they're general unsecured claims.

(Transcript of June 22, 2005 proceedings, p. 6.)

In analyzing the issues and arguments of all the parties, the Court has kept in mind the legislative intent supporting the Bankruptcy Reform Act, which may be summarized as follows:

> [T]he purpose behind Chapter 11 reorganization is to provide legal processes by which a failed business is provided with an opportunity to reorganize its financial affairs, thereby allowing the business to continue for the benefit of its creditors (both pre-petition and post-petition), its employees and its shareholders.

NLRB v. Greyhound Lines (In re Eagle Bus Mfg.), 158 B.R. 421 (D. Tex. 1993), *citing*, United States v. Whiting Pools, Inc., 462 U.S. 198, 203 (1983).

Issue 1: Are the Claims for Unused Vacation Time/Sick Leave Entitled to Priority Payment as Administrative Expenses under the Bankruptcy Code?

The applicable version of 11 U.S.C. § 507(a) provides, in pertinent part: "The following expenses and claims have priority in the following order: (1) First, administrative expenses allowed under section 503(b) of this title . . . . " The relevant portion of 11 U.S.C. § 503(b) explains:

> After notice and a hearing, there shall be allowed administrative expenses, . . . including – (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

As the Fifth Circuit Court of Appeals has noted:

Section 507(a)(1) . . . establishes that the administrative expenses incurred in bankruptcy are to be given priority in distribution such that they are generally paid in full before other unsecured non-priority claims. . . . These administrative expenses include the actual and necessary costs and expenses of preserving the estate.

> In order to qualify as an "actual[,] necessary cost" under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee that benefitted the estate.

In re Jack/Wade Drilling, Inc., 258 F.3d at 387. "The words 'actual' and 'necessary' have been construed narrowly: 'the debt must benefit [the] estate and its creditors.'" Toma Steel Supply, Inc. v. Transamerican Natural Gas Corp. (In re Transamerican Natural Gas Corp.), 978 F.2d 1409, 1416 (5th Cir. 1992) (citation omitted).

> A prima facie case under § 503(b)(1) may be established by evidence that (1) the claim arises from a transaction with the debtor-in-possession; and (2) the goods or services supplied enhanced the ability of the debtor-in-possession's business to function as a going concern. After the movant has established a prima facie case, the burden of producing evidence shifts to the objector; but the burden of persuasion, by a preponderance of the evidence, remains with the movant. Mere allegations, unsupported by evidence, are insufficient to rebut the movant's prima facie case.

Id. (internal citations omitted).

In the instant case, there is no question Appellant has met the burden of proof regarding the first element of her prima facie case. The claim for allegedly unused vacation and sick leave clearly "arises from a transaction with the debtor-in-possession," and is, thus, a post-petition debt. Rapides Primary admits it filed its Voluntary Petition for Relief under Chapter 11 in May 2002, but Dr. Phillips did not sign her employment contract or begin working for Appellee until August 2002.

Rapides Primary argues, however, that the unused vacation time and sick leave at issue are not entitled to priority payment, because they do not qualify as "wages, salaries, or commissions" under § 503(b)(1)(A), and they did not benefit the estate. On the first issue, Appellee contends that under the reasoning of Lasky v. Phones for All, Inc. (In re Phones for All, Inc.), 288 F.3d 730 (5th Cir. 2002), ("Phones for All") if vacation, severance, and sick leave pay were considered "wages, salaries, or commissions" for purposes of § 503(b)(1)(A), the language of § 507(a)(3)(A), which specifically includes vacation, severance, and sick leave pay within its definition of "wages," would be superfluous. Rapides Primary further asserts no cases decided under the current bankruptcy laws allow vacation pay and/or sick leave to qualify as administrative expenses under § 503(b)(1)(A).

This Court, however, disagrees with Appellee's interpretation of Phones for All. Although the district court did, indeed, engage in the statutory analysis recited by Rapides Primary, Judge Jones, writing for the Fifth Circuit, clarified the district court's holding as follows:

> We understand [the district] court's statutory interpretation to mean that a pre[-]petition severance agreement is not entitled to post-petition administrative priority status. As the Tenth Circuit explained, to attain such status, a severance claim "must have arisen from a transaction with the debtor in possession" and must then confer a benefit on the debtor's estate. (Citation omitted.) This reading of the statutory provisions makes clear the claimants' burden to reconfirm or renegotiate post-petition any severance packages they may have if they continue to work for the debtor.

Phones for All, 288 F.3d at 732.

Using this reasoning, the inclusion of the words "vacation, severance, and sick leave pay" in § 507(a)(3)(A) has no effect on the definition of "wages, salaries, or commissions" under § 503(b)(1)(A). § 507(a)(3)(A) creates a separate and distinct third priority level for claims regarding certain employment benefits earned within ninety (90) days before the Chapter 11 petition is filed. Thus, Congress granted this limited class of pre-petition claims "priority ahead of other pre[-]petition claims, but behind post[-]petition administrative expense claims." In re Acoustiseal, Inc., 290 B.R. 354, 362 (W.D. Mo. 2003). Such a prioritization of pre-petition and post-petition claims is consistent with the legislative purpose behind Chapter 11 of the Bankruptcy Code, as stated above. It follows logically that Congress, in an effort to preserve the bankrupt estate, would grant those workers who help keep a troubled company afloat during its reorganization a greater incentive/reward than it would give people who worked for that same company when it was financially stable.

Thus, § 503(b)(1)(A) and § 507(a)(3)(A), as written, co-exist in harmony. When the language of a statute is unambiguous, in the absence of clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive. United States v. Turkette, 452 U.S. 576 (1981). Therefore, there is no reason to exclude vacation and sick leave from the definition of "wages, salaries, or commissions" in § 503(b)(1)(A). This conclusion is further supported by the express language of § 503(b) that wages and salaries are

"includ[ed]" in the definition of "administrative expenses." Jurisprudence has interpreted this wording to mean that the enumeration in § 503(b) "is to be considered neither comprehensive nor exclusive." In re Eagle Bus Mfg., 158 B.R. 421, at 443.

This position is also bolstered by In re Fleming Packaging Corp., 2004 Bankr. LEXIS 1384 (C.D. Ill. 2004), which states:

> The Bankruptcy Code draws a clear distinction, for priority purposes, between wages earned pre[-]petition and those earned post[-]petition. Subject to a cap, third priority is accorded wages earned within ninety days before bankruptcy. 11 U.S.C. § 507(a)(3). Wages earned after the filing enjoy first priority status, 11 U.S.C. § 507(a)(1) and § 503(b)(1)(A), on the theory that services rendered to a debtor help preserve the value of the estate. Section 507(a)(3) expressly includes vacation, severance, and sick leave pay, to the extent earned within ninety days pre[-]petition, within the category of compensation entitled to third priority. Those subsets are not expressed in Section 503(b)(1)(A). Nevertheless, courts uniformly hold that vacation pay, severance pay and sick leave pay, as well as other forms of compensation, are eligible for administrative priority status. *See* 4 Collier on Bankruptcy ¶ 503.06[7] (15th ed. rev. 2004).[2]

Similarly, In re Golden Distributors, Ltd., 134 B. R. 760, 763 (S.D. N.Y. 1991) found:

> Although 11 U.S.C. § 503(b) does not specifically include related benefits, vacation and severance pay . . . as forms of wages . . . are allowable as expenses necessary for the preservation of the estate

---

[2]This particular learned treatise also disagrees with Appellee's assertion at page 5 of its brief that the current bankruptcy laws have superceded earlier jurisprudence allowing vacation pay to qualify as an administrative expense. Specifically, 4 Collier on Bankruptcy ¶ 503.06[7][c] (15th ed. rev. 2006) explains that the practice of classifying post-petition vacation pay as an administrative expense "has generally been followed in cases under the Bankruptcy Code."

9

and thus, are entitled to priority status under 11 U.S.C. § 507(a)(1). In re Schatz Federal Bearings Co., Inc., 5 B.R. 549, 552 (S.D. N.Y. 1980).

Likewise, the First Circuit Court of Appeals has held "[s]everance and vacation pay, incident to post-petition employment, are widely considered to be administrative expenses." In re Doctors Hospital, Inc., 1995 U.S. App. LEXIS 1576 (1st Cir. 1995).

Considering this formidable authority, the Court finds the unused vacation pay and sick leave Dr. Phillips allegedly earned after Rapides Primary's petition for Chapter 11 reorganization was filed are included within the category of "wages, salaries, or commissions" under § 503(b)(1)(A). The inquiry may not end here, however. As noted above, in order to be entitled to priority payment, Dr. Phillips must show the post-petition debts benefitted the estate.

Rapides Primary admits in its brief that the salary paid to Dr. Phillips benefitted the estate, because it compensated her for her services. However, it argues Rapides Primary "does not benefit from an employee who leaves on vacation or stays home sick. Instead [it is] without a physician to treat patients who must then be referred to another staff physician." (Document No. 19, p. 7.) In reaching the same conclusion championed by Rapides Primary, the Bankruptcy Court applied different reasoning and found that terminating one's employment, as Dr. Phillips did, was of no benefit to the estate.

10

The jurisprudence, the language of the Bankruptcy Code, and the legislative purpose behind the Code, addressed in detail above, contemplate the preservation of the bankrupt estate. As the Fifth Circuit Court of Appeals has explained:

> Although the amount to be allowed as an administrative expense must be measured in dollars and cents . . ., the question whether the estate has been benefit[t]ed cannot be so narrowly confined. . . . [T]he purpose of the priority treatment afforded by § 503 is to encourage third parties to provide necessary goods and services to the debtor-in-possession so that it can continue to conduct its business, thus generating funds from which pre[-]petition creditors can be paid. Although the estate receives a benefit that often can be measured by the actual cost of necessary goods or services supplied, the estate also receives other less readily calculable benefits, such as the ability to conduct business as usual.

In re Transamerican Natural Gas Corp., 978 F.2d at 1420.

The First Circuit Court of Appeals addressed a situation similar to the one at bar and found that vacation pay included in the contract for an administrator who was hired after a hospital had filed a Chapter 11 bankruptcy petition, "benefit[t]ed the estate by inducing [the employee] to act as the Hospital's administrator . . ." in the same manner his salary did. In re Doctors Hospital, Inc., 1995 U.S. App. LEXIS at 1576.

Likewise, vacation pay and sick leave in the employment agreement presented to Dr. Phillips were part of the overall benefits package that assured Rapides Primary could maintain adequate staff to conduct its business and, thereby, preserve the estate. Thus, the benefit to the estate is the fact Appellant

was able to employ an admittedly competent physician such as Dr. Phillips despite the fact the company was in bankruptcy. In the normal course of business, one would certainly expect an employee to be absent occasionally and even to leave her employment to take another job. These workplace realities do not negate the benefits the bankrupt estate received from hiring the employee. The Bankruptcy Court's reasoning to the contrary is illogical. While evidence may reveal no vacation and/or sick pay are actually owed to Dr. Phillips, those factual issues are not properly determined on this summary judgment.

Issue 2: Are Appellant's Claims for Penalties and Attorney's Fees Entitled to Priority Payment as Administrative Expenses Under the Bankruptcy Code?

Dr. Phillips does not ask to have her claims for penalties and attorney's fees paid as priority administrative expenses. Indeed, her counsel admitted at oral argument that these claims "are just general unsecured claims . . . ." (Transcript of June 22, 2005 proceedings, p. 12.) This conclusion is in complete agreement with the legal position espoused by counsel for Rapides Primary. (Transcript of June 22, 2005 proceedings, pp. 7-8.) Yet, rather than simply recognize the concession on this issue, the Bankruptcy Court went one step further and determined the facts did not support a claim for penalties and attorney's fees. This was inappropriate on a motion for partial summary judgment. The issue of whether penalties and attorney's fees are owed to Dr. Phillips will remain extant and should be resolved at trial. If such amounts are found to be due, however,

they will be classified as general unsecured claims, and they will not be entitled to priority payment as administrative expenses under § 507(a)(1).

Issue 3: Did Filing Suit in Alexandria City Court Violate the Automatic Stay?

As noted above, in its Reasons for Decision, the Bankruptcy Court did not specify why it was granting partial summary judgment in favor of Rapides Primary on the automatic stay issue. In its brief, Appellee takes the position that the failure to mention the automatic stay means any related issues are reserved for trial and are not properly before this Court on appeal. (Document No. 19, pp. 11-12.)

However, the Bankruptcy Court did enter an Order dated July 12, 2005 granting the Motion for Partial Summary Judgment. It did not grant the motion in part and deny it in part. At oral argument, counsel for Rapides Primary made it clear his client was seeking a legal determination that "the filing of the lawsuit was a violation of the automatic stay provisions of 11 U.S.C. [§] 362," with a reservation of "all the other issues for damages and sanctions to trial on the merits." (Transcript of June 22, 2005 proceedings, p. 7.) The Bankruptcy Court granted the requested relief, even though it did not explain why it was doing so. Therefore, the issue is properly before this Court on appeal.

11 U.S.C. § 362(a)(1) prevents the commencement or continuation of judicial actions that were or could have been brought against the debtor before

he filed a petition in bankruptcy. The jurisprudence interpreting this section explains:

> The stay provision of subsection 1 of 362(a) "simply does not apply to post-bankruptcy events." Holland America Ins. Co. v. Succession of Roy, 777 F.2d 992, 996 (5th Cir. 1985); Bellini Imports LTD. v. Mason and Dixon Lines, Inc., 944 F.2d 199, 201 (4th Cir. 1991). A claim brought on a cause of action arising post-petition is not barred by the stay provision.

Stewart & Stevenson Services, Inc. v. Superior Boat Works, Inc., 1994 U.S. Dist. LEXIS 12362 (E.D. La. 1994). *See also* 3 Collier on Bankruptcy ¶ 362.03[3][c] (15th ed. rev. 2006) ("Actions on claims that arise after the commencement of the case are not stayed. Such a stay would discourage others from dealing with the trustee or debtor in possession.")

Because Dr. Phillips's cause of action undoubtedly arose after Rapides Primary filed its petition for Chapter 11 protection, initiating the suit in Alexandria City Court did not run afoul of the automatic stay provision and cannot provide a basis for imposition of any type of sanctions.

## CONCLUSION

For the reasons set forth above, the July 12, 2005 Order of the Bankruptcy Court is REVERSED and the matter is REMANDED for further proceedings consistent with this opinion.

SIGNED on this 7th day of August, 2006, at Alexandria, Louisiana.

Dee D. Drell
United States District Judge